UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DEON HUNTER,

    Defendant.

Case No. 24-cr-20066

HON. MARK A. GOLDSMITH

_____/

## OPINION & ORDER
## DENYING DEFENDANT'S MOTION TO SUPPRESS (Dkt. 22)

Before the Court is Defendant Deon Hunter's motion to suppress evidence seized by officers during a traffic stop (Dkt. 22). The Court denies the motion for the reasons set forth below.[1]

### I. BACKGROUND

Hunter is charged in this case with illegal possession of a machinegun, in violation of 18 U.S.C. § 922(o). Indictment (Dkt. 13).

On January 29, 2024, while on patrol in their vehicle, City of Detroit police officers Deshawn Perry, Michael Flannel, and Steven Anouti pulled Hunter's vehicle over for Hunter's failure to wear a seatbelt. 5/28/24 Hr'g Tr. at 6, 8–9, 42–44 (Dkt. 29). As officers pulled Hunter's vehicle over, Flannel used the in-car computer to check the registration and insurance status of

---

[1] In addition to the motion, the briefing includes the Government's response (Dkt. 25) and supplemental brief (Dkt. 32) and Hunter's supplemental brief (Dkt. 31). The Court held an evidentiary hearing on the motion on May 28, 2024.

Hunter's vehicle's information on the Law Enforcement Information Network (LEIN) database. Id. at 44–45. Flannel's review of the LEIN database indicated that the vehicle was uninsured. Id.

Perry and Anouti approached the driver's side of Hunter's vehicle. Id. at 60–61. Perry asked for Mr. Hunter's proof of insurance. Id. at 61. According to Perry and Anouti, Hunter was "shaking," "speaking extremely fast, almost rambling," and was "nervous throughout the interaction." Id. at 16, 61. The officers also noticed that Hunter repeatedly attempted to zip up his jacket but struggled to do so. Id. at 17, 47. Perry asked whether Hunter had weapons in the vehicle and Hunter stated that he did not. Perry Bodycam at 02:15–02:22 (Gov't Ex. 1). Perry directed Hunter to exit the vehicle. 5/28/24 Hr'g Tr. at 62. Once Hunter was out of the vehicle, officers saw what appeared to be an imprint of a heavy object. Id. at 63. Believing the object to possibly be a gun, Perry frisked Hunter. Id. Officers seized the handgun and arrested Hunter. Id. at 20.

Hunter now moves under the Fourth Amendment to suppress evidence of the gun seized at the time of the traffic stop. Mot. at 1.

## II. ANALYSIS

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Fourth Amendment's protections "extend to brief investigatory stops of vehicles that fall short of traditional arrest." United States v. Lyons, 687 F.3d 754, 762 (6th Cir. 2012) (punctuation modified). Courts "primarily enforce these standards through the exclusionary rule, which requires the suppression of any evidence seized during a vehicle search premised on an illegal traffic stop." Id.

Hunter argues that the evidence seized during the January 29, 2024 traffic stop is subject to suppression on three grounds: (i) the traffic stop was unlawful because officers lacked probable

2

cause to support the stop, (ii) even if the initial stop was lawful, officers unlawfully prolonged the stop without reasonable suspicion, and (iii) officers unlawfully subjected Hunter to a pat-down search without reasonable suspicion. See Br. Supp. Mot. 5–7. The Court addresses each argument in turn.

### A. The Traffic Stop

To make a lawful traffic stop, "an officer must possess either probable cause of a civil infraction or reasonable suspicion of criminal activity." United States v. Conley, No. 21-1723, 2023 WL 165966, at *3 (6th Cir. Jan. 12, 2023) (punctuation modified). Permissible traffic stops include those premised on probable cause that passengers are without seat belts. United States v. Street, 614 F.3d 228, 232 (6th Cir. 2010). "Probable cause is a reasonable ground for belief supported by less than prima facie proof but more than mere suspicion." Conley, 2023 WL 165966, at *3.

The Government maintains that officers stopped Hunter for failure to wear a seat belt. Gov't Suppl. Br. at 9. Although not entirely clear from his briefing, Hunter appears to challenge the validity of the traffic stop. In a footnote in his motion, Hunter argues that video from the officers' dash camera shows that the officers "could not really see whether or not Mr. Hunter was wearing a seat belt due to the way the officer's vehicle was positioned . . . ." Br. Supp. Mot. at 6 n.6.

The officers had probable cause to stop Hunter for driving without his seat belt. Perry and Flannel testified to seeing Hunter without his seat belt. 5/28/24 Hr'g Tr. at 8, 44. Having reviewed the dashcam video (Gov't Ex. 8), the Court does not agree with Hunter's assertion that the video requires the finding that the officers could not see whether Hunter was wearing a seat belt. The

3

officers' testimony and dashcam video show that the traffic stop was a lawful stop supported by probable cause.[2]

### B. Prolonged Stop

When an officer conducts a lawful stop, "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." Conley, 2023 WL 165966, at *4 (punctuation modified). "At the same time, that officer's mission includes ordinary inquiries incident to the traffic stop." Id. (punctuation modified).

Hunter argues that officers subjected Hunter to an unwarranted prolonged stop. Def. Suppl. Br. at 7. He submits that, because (i) Hunter provided his license and registration to the officers "almost immediately," and (ii) the officers already knew that the vehicle was uninsured from searching the LEIN system, officers were without grounds to extend the stop when they directed Hunter to step out of the vehicle. Id. at 7–8.

Hunter's argument fails because the officers did not unnecessarily extend the stop. The stop lasted only two-and-a-half minutes by the time Perry frisked Hunter and found the gun in his jacket. Gov't Suppl. Br. at 11 (citing Perry Bodycam at 00:15–02:40). Indeed, Hunter was still searching for a screen shot of his proof of insurance when Perry directed him to step out of the vehicle. Although Hunter contends that Perry's request for Hunter's proof of insurance was unnecessary given that the officers' previously found Hunter's vehicle listed as uninsured on the

---

[2] To the extent Hunter argues that the stop was unlawful because it was "pretextual," see Br. Supp. Mot. at 7, this argument fails. Street, 614 F.3d at 232 (explaining that Whren v. United States, 517 U.S. 806 (1996) "puts an end to inquiries about an officer's state of mind in conducting a traffic stop" and that "[t]he question after Whren goes not to the subjective motives of the officer's actions but to the objective reality (or not) of whether the officers had probable cause to believe that a crime, including a traffic violation, had occurred").

LEIN database, Perry's attempt to verify the accuracy of the LEIN database by questioning Hunter for proof of insurance was neither unnecessary nor outside the "mission" of the traffic stop.

Hunter also objects that officers lacked a "reasonable basis" for directing Hunter to step out of the vehicle. Def. Suppl. Br. at 8. But this assertion fails to render the stop unlawful. The Sixth Circuit has explained that "clearly established law" permits officers to "instruct [a] driver or occupant to exit the vehicle" during a traffic stop. Conley, 2023 WL 165966, at *5 (punctuation modified). Perry's direction to Hunter to step out of the vehicle did not unlawfully prolong his detention.

### C. The Pat Down

"Due to the unique dangers traffic stops present for police officers, an officer may, in the course of conducting a legal stop, order a driver out of the vehicle and conduct a Terry frisk should the officer reasonably suspect the individual to be armed and dangerous." United States v. Stennis, 457 F. App'x 494, 499 (6th Cir. 2012). "Reasonable suspicion requires more than a mere hunch, but is satisfied by a likelihood of criminal activity less than probable cause, and falls considerably short of satisfying a preponderance of the evidence standard." Id. (punctuation modified). An "officer's perception of a bulge suspected to be a weapon provides reasonable suspicion that the individual may be armed and dangerous." Id.

Here, there was reasonable suspicion that Hunter possessed a firearm. Perry observed a heavy object in Hunter's coat pocket immediately after Hunter stepped outside of the vehicle. 5/28/24 Hr'g Tr. at 17. As Perry explained, the object in Hunter's pocket appeared to be heavier than a cell phone and was consistent with a firearm. Id. This observation is alone sufficient to provide Perry with reasonable suspicion that Hunter may have been armed or dangerous. Stennis, 457 F. App'x at 499.

5

### III. CONCLUSION

For the reasons stated above, the Court denies Defendant Deon Hunter's motion to suppress (Dkt. 22).

Dated: October 23, 2024           s/Mark A. Goldsmith
       Detroit, Michigan          MARK A. GOLDSMITH
                                 United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 23, 2024.

                                           s/Carolyn Ciesla
                                           Case Manager